NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (CBN: 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3708
    Email:  Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 18-72-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO PRE-SENTENCE REPORT AND GOVERNMENT'S POSITION RE: SENTENCING FOR DEFENDANT ISAIAH SUAREZ |
| v. | |
| ISAIAH SUAREZ, | |
| Defendant. | Hearing Date: June 24, 2019<br>Hearing Time: 9:30 a.m. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Brett A. Sagel, hereby files its response to the Pre-Sentence Report and its position regarding sentencing for defendant ISAIAH SUAREZ.

///

The Government's sentencing position and response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 10, 2019    Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

        /s/
BRETT A. SAGEL
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On August 28, 2018, defendant ISAIAH SUAREZ ("defendant") pled guilty to count one of the indictment in case number SA CR 18-72-JVS, charging defendant with conspiracy to manufacture, possess with intent to distribute, and distribute Schedule II and IV Controlled Substances, in violation of 21 U.S.C. § 846.  The United States Probation Office ("USPO") disclosed its Presentence Report ("PSR") to the parties on December 26, 2018.  The USPO determined defendant's total offense level to be 27, and he is a criminal history category I, resulting in a range of imprisonment of 70-87 months.  The USPO recommends that defendant receive a sentence of 48 months imprisonment, and a three year period of supervised release.

The Government has no objections to the factual statements in the PSR or the calculation of criminal history category.  The Government, however, disagrees with the USPO's determination of mitigating factors.  For the reasons set forth below, and a separately filed motion by the Government, the Government believes that the appropriate total offense level should be 22 and the resulting advisory sentencing guideline range would be 41-51 months' imprisonment.  As a result, the Government recommends a term of imprisonment of 41 months and a three-year term of supervised release.

**II.  FACTUAL BACKGROUND**

Defendant admitted to the following facts pursuant to the factual basis of his plea agreement:

Beginning at least as early as on or about April 16, 2017 and continuing until on or about April 3, 2018, in Orange County, within

the Central District of California, and elsewhere, defendant along with codefendants Wyatt Pasek and Duc Cao, and others, conspired and agreed with each other to knowingly and intentionally manufacture, possess with intent to distribute, and distribute: a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; mixtures and substances containing detectable amounts of analogues of fentanyl, including, cyclopropyl fentanyl, methoxyacetyl fentanyl, and carfentanil, each Schedule II controlled substances; and a mixture and substance containing a detectable amount of alprazolam, also known as "Xanax," a Schedule IV controlled substance.

Defendant and codefendants Pasek and Cao used the fentanyl and analogues of fentanyl to manufacture counterfeit pills to appear as legitimate 30 mg pharmaceutical grade Oxycodone.  Both real Oxycodone and the counterfeit pills defendant and codefendants manufactured and distributed contain the stamp "A215" on them and are round and blue in color.  Defendant and codefendants Pasek and Cao used the alprazolam to manufacture counterfeit pills to appear as legitimate 2 mg pharmaceutical grade Xanax.  Both real Xanax and the counterfeit pills defendant and codefendants manufactured and distributed contain the stamp "GG249" on them and are oblong and white in color.

Co-defendants Pasek and Cao ordered chemicals and equipment on the internet from China and elsewhere for the manufacturing of the counterfeit Oxycodone pills, including the fentanyl and fentanyl analogues.  Defendant received a package at his mother's house on at least one occasion that included methoxyacetyl fentanyl that codefendant Pasek ordered from China for defendant to use to manufacture the counterfeit Oxycodone pills.  Defendant and

codefendant Pasek discussed how to manufacture the pills and the dosage to use to make the pills. Starting in approximately October 2017 and continuing to approximately April 3, 2018, codefendant Pasek paid for an apartment in Newport Beach for defendant at which to live and to manufacture the pills. Defendant and codefendants Pasek and Cao used defendant's apartment in Newport Beach as a clandestine laboratory to manufacture the drugs and stored and maintained the drugs there for distribution to others. Defendant kept the pill presses, small scales, drugs, dyes, binding agents, and bags, among other items to manufacture and distribute the drugs, at his apartment, and defendant and codefendant Cao pressed the pills at defendant's apartment to be distributed. In addition to paying the rent of defendant's apartment, codefendant Pasek also paid defendant for pressing the pills. Codefendants Pasek and Cao operated a marketplace on the darkweb to sell and distribute the drugs that defendant and his codefendants manufactured.

On March 5, 2018, codefendant Cao placed into a United States Postal Service ("USPS") receptacle seven USPS priority mail parcels, which contained approximately 1,400 round, blue pills stamped with "A215" that contained fentanyl, which defendant assisted to manufacture. On April 2, 2018, codefendant Cao placed into an USPS receptacle thirteen USPS priority mail parcels, which contained approximately 4,000 round, blue pills stamped with "A215" that contained fentanyl, which defendant assisted to manufacture. On April 3, 2018, defendant and codefendants Pasek and Cao possessed with the intent to distribute approximately 99,536 round, blue pills stamped with "A215," as well as possessed with the intent to distribute approximately 864 oblong, white pills stamped with

"GG249," along with large bags containing blue and white powders, scales, and a pill press.

The drugs that law enforcement seized from defendant and codefendants Pasek and Cao, have been properly tested by the United States Postal Service's Forensic Laboratory Services, which include the following amount of drugs and the type of drugs:

| | |
|---|---|
| Fentanyl | 2076 grams |
| Cyclopropyl Fentanyl | 3815 grams |
| Methoxyacetyl Fentanyl | 2032 grams |
| Carfentanil | 64 grams |
| Alprazolam | 247 grams |

### III. SENTENCING RECOMMENDATION

#### A. The Government's Guideline Calculation

The Government submits that the following guideline calculation applies in the sentencing of defendant:

| | | |
|---|---|---|
| Base Offense Level: | 33 | U.S.S.G. § 2D1.1(a)(5) |
| Downward Departure | -2 | U.S.S.G. § 2D1.1(b)(18) |
| Mitigating Role: | -3 | U.S.S.G. § 3B1.2 |
| Downward Departure | -3[1] | |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 22 | |

The Government does not believe the facts before this Court, specifically defendant's admitted to factual basis, are sufficient to

---

[1] The Government believes a three-level departure is appropriate based on the separately filed motion of the Government.

4

support the two-level upward adjustment for "mass-marketing," pursuant to U.S.S.G. § 2D1.1(b)(7) as the USPO recommended.[2] In reviewing the PSR, and the underlying facts of this case, the Government does believe a two-level "safety valve" departure pursuant U.S.S.G. § 2D1.1(b)(18) is appropriate, however, no further departure is warranted.

A criminal history category of I and a total offense level of twenty-two, yields an advisory sentencing range of 41-51 months imprisonment.

    **B.**    **The Government's Recommended Sentence**

The law provides that sentencing courts must start with the sentence advised by the Sentencing Guidelines. <u>United States v. Booker</u>, 543 U.S. 220, 264 (2005) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."); <u>United States v. Cantrell</u>, 433 F.3d 1269, 1279 (9th Cir. 2006) (stressing that "district courts still must consult the Guidelines and take them into account when sentencing, even though they now have the discretion to impose non-Guidelines sentences"). Pursuant to 18 U.S.C. § 3553(a), the court should "impose a sentence sufficient, but not greater than necessary," to comply with the enumerated purposes of sentencing, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D)

---

[2] The USPO sought the same two-level enhancement in co-defendant Duc Cao's sentencing, which this Court did not impose.

5

>     to provide the defendant with needed educational or
>     vocational training, medical care, or other
>     correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1), (2).

Although the USPO believed defendant's advisory sentencing range was 70-87 months' imprisonment, the USPO basically recommended a four-level downward variance for the following mitigating reasons: "Suarez had a troubled childhood, graduated from high school, is gainfully employed, and it appears his untreated addiction to heroin contributed to the commission of the instant offense."[3] The Government simply cannot agree with the USPO's recommended variance nor the "bases" justifying the variance. Most notably, the Government is not sure how being addicted to drugs is a mitigating factor, but would have no objection to defendant participating in the RDAP program, and upon successful completion, can receive a sentencing reduction. The agreed-to-facts in this case demonstrably show that defendant's "contributions to society," were deleterious and hardly a mitigating factor. Specifically, the significant quantity of opioids and fentanyl- and fentanyl-analogue-based drugs as well as operating a clandestine drug laboratory in a crowded residential and commercial area (the Newport Beach Peninsula), easily outweighs "graduating from high school."

As a result, the Government recommends this Court sentence defendant to: 41 months' imprisonment; pay a special assessment of $100; and serve three years of supervised release under the conditions set forth by the USPO. The Government believes this

---

[3] It should be noted that the USPO issued its PSR and recommendation letter prior to defendant's violations of his pre-trial conditions of release, namely his testing positive for and use of fentanyl.

6

sentence is reasonable and is the minimum sentence necessary to provide appropriate general and specific deterrence, to promote respect for the law, to provide just punishment, and to reflect the seriousness of defendant's crime.

**IV. CONCLUSION**

The Government recommends that this Court follow the Government's sentencing recommendation, which is both reasonable and appropriate in this case, and is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a).